DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

AJAY KRISHNAMURTHY (CABN 305533)
KEVIN J. BARRY (CABN 229748)
LINA Y. PENG (NYBN 5150032)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Email: ajay.krishnamurthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 17-CR-533-EMC |
| Plaintiff, | |
| v. | [Proposed]<br>Motion for Partial Reconsideration of January 13, 2021 Discovery Order |
| JONATHAN JOSEPH NELSON et al, | |
| Defendants. | |

    The United States respectfully moves for partial reconsideration of this Court's January 13, 2021 Order requiring (1) production of all Jencks Act material at least six months before trial and (2) immediate production of material that identifies witnesses and victims.

    With respect to the first category—Jencks Act material—the Court's order is contrary to law and "unenforceable." *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986). The Jencks Act "prohibits the pretrial discovery of statements made by prospective government witnesses," *United States v. Harris*, 543 F.2d 1247, 1249 (9th Cir. 1976), and courts have "no power to compel the disclosure of such material prior" to the witnesses' testimony at trial, *United States v. Avellino*, 129 F. Supp. 2d 214, 218 (E.D.N.Y. 2001).

With respect to the second category—material that can identify witnesses and victims—the United States has produced most of the information it possesses about witnesses and victims. These productions have included medical records, audio-recorded statements, the contents of electronic devices, and law enforcement reports. At this point, the United States seeks to protect only five of its most vulnerable witnesses by delaying production of 172 pages of material that can identify them until three months prior to trial. As set out in the United States' concurrent *ex parte* filing (Exhibits 8 – 12 to this motion), these documents are primarily law enforcement reports that fall within the protections of Federal Rule of Criminal Procedure 16(a)(2). In nearly identical circumstances, the Ninth Circuit has made clear that such reports are not subject to production at all. *United States v. Fort*, 472 F.3d 1106, 1119 (9th Cir. 2007). In any event, even if Rule 16(a)(2) did not apply, delaying production is within the Court's discretion under Rule 16(d)(1) and will not prejudice the defense given the disclosures that the United States has already made.

## I.      Legal Standard

District courts have "inherent power" to reconsider their own orders in criminal cases. *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). "No precise 'rule' governs" the district court's "judicial discretion" to "revisit" its own order. *Id.* The Federal Rules of Criminal Procedure are silent on the subject. As a result, courts within this district often look to the rules of civil procedure—specifically Federal Rules of Civil Procedure 59(e) and 60(b)—for guidance. *United States v. Chavez*, No. 15-CR-00285-LHK, 2018 WL 4207350, at *5 (N.D. Cal. Sept. 4, 2018). *See also United States v. Arteaga-Centeno*, No. 18-CR-00332-CRB-1, 2019 WL 1995766, at *6 (N.D. Cal. May 6, 2019) ("So, in considering the Government's Motion, Federal Rule of Civil Procedure 60 applies."). As relevant here, Federal Rule of Civil Procedure 60(b)(6) provides this Court may reconsider a prior order for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

## II.      Background

Trial in this case is set for October 2021. To date, the United States has produced over 60,000 pages of discovery, as well as hundreds of gigabytes of electronic data. Prior productions have included medical records of victims of violent crimes and sexual assaults, audio-recorded interviews, the contents of over 45 electronic devices—including electronic devices of victims and cooperating witnesses, and

law enforcement reports describing witnesses and victims who will testify about the defendants' conduct.

Following a series of discovery orders in this case, the United States has continued to produce material that identifies cooperating witnesses and victims of violent crimes. For instance, in addition to thousands of pages of law enforcement reports, the United States has produced recorded interviews of the family members and friends of murder victim Joel Silva, as well as recorded interviews and text messages from Victim 4. And in response to Judge Beeler's August 14, 2020 discovery order, the United States produced the entirety of a cooperating witness's cellular phone as well as made the entirety of Victim 6's phone available for defense inspection.

Many civilian witnesses in this case have expressed an understandable fear of being publicly identified. The alleged conduct here is serious and violent, and the community from which these victims and witnesses come is small. The Superseding Indictment alleges the Hells Angels "are a transnational violent outlaw motorcycle gang," and that the defendants in this case violated the Racketeer Influenced and Corrupt Organizations (RICO) Act by conspiring to conduct the affairs of an enterprise—the Hells Angels Sonoma County charter—through a pattern of racketeering activity, including murder, robbery, sexual assault, extortion, and witness tampering. ECF No. 374.

There have already been attempts to intimidate victims and witnesses in order to dissuade them from cooperating with law enforcement. For instance, according to Victim 6, Defendant Raymond Foakes sexually assaulted her in 2016 and then told her he would physically assault her if she reported the incident. ███████████████████████████████████████████████████████████████

### III. This Court Should Reconsider its January 13, 2021 Order

This Court should reconsider its orders requiring (1) production of Jencks Act material at least six months before trial and (2) immediate production of material that identifies witnesses and victims. Each category is addressed separately below.

#### A. *Jencks Act Material*

This Court's order requiring the production of all Jencks Act material at least six months prior to trial[2] is "unenforceable." *Taylor*, 802 F.2d at 1118. The Jencks Act provides that "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). In other words, the statute "prohibits the pretrial discovery of statements made by prospective government witnesses," *United States v. Harris*, 543 F.2d 1247, 1249 (9th Cir. 1976), and courts have "no power to compel the disclosure of such material prior" to the witnesses' testimony, *Avellino*, 129 F. Supp. 2d at 218 .

The strict timing provisions of the Jencks Act are "necessary to protect government witnesses from threats, bribery and perjury." *United States v. Walk*, 533 F.2d 417, 419 (9th Cir. 1975). In keeping with the clear mandate of the statute, the Ninth Circuit has repeatedly reversed district court orders mandating pretrial disclosure of witness statements. *United States v. Hoffman*, 794 F.2d 1429, 1433 (9th Cir. 1986); *United States v. Mills*, 641 F.2d 785, 790 (9th Cir. 1981); *Walk*, 533 F.2d at 420. *See also United States v. Cerna*, 633 F. Supp. 2d 1053, 1056 (N.D. Cal. 2009) ("In light of these holdings, the government would be within its rights in withholding Jencks Act statements until after the witness testifies on direct—and this would be so even if the Jencks Act statements contain *Brady* information.").

As explained in its prior filings, the United States does not seek to invoke the full protections of the Jencks Act; the United States has already produced a number of witnesses' prior statements in the form of audio-recorded interviews. Moreover, in recognition of the complexity of the case and in order to avoid disruptions to the Court's trial schedule, the United States has previously proposed production

---

[2] With respect to this category of documents, the United States is in possession of grand jury transcripts, audio-recorded statements, e-mails, and text messages.

of all such documents 90 days before trial. This timeline compares favorably to other similar violent crime cases in this district. In *United States v. Escobar-Ayala et al*, 17-CR-68-EJD, for example, Judge Davila's scheduling order required the production of Jencks material (only on an AEO basis) eight weeks before trial. *See also* ECF No. 1098 (compiling scheduling orders from other cases in this district). These measures, as well as the extensive discovery the defense has already received, reasonably account for the complexity of preparing this case.

The 90-day difference between the Court's order and the United States' proposal in this motion is significant. Any period of time in which victims and witnesses are exposed presents a risk that they will subject to intimidation, harassment, and violence; this proposal halves that window. This is especially important in the context of this trial, where defendants have already tried to intimidate prospective witnesses and dissuade them from cooperating with law enforcement.

B. *Material that identifies witnesses and victims*

This Court should also reconsider its order requiring immediate production of material that could identify victims and witnesses. To be clear, the United States either has produced or will produce the vast majority of victim/witness information in its possession. Through this motion, the government seeks to withhold a narrow set of documents for the purpose of protecting the identities of five of the government's vulnerable witnesses[3] by delaying production of 172 pages of material that could identify them until three months prior to trial. Concurrently with this motion, the United States has submitted for *in camera* review the materials for which it seeks to delay production.[4] These materials comprise only 172 pages, which is a small percentage of the over 60,000 pages of discovery the United States has already produced.

Because of the nature of their testimony and their prior relationships with the defendants, these five witnesses face heightened safety concerns if their identities were to be revealed:

---

[3]    Consistent with the Court's order, we either have or will produce the remaining material in our possession that is subject to our pretrial discovery obligations.

[4]    These filings are submitted as Exhibits 8 – 12 to this proposed motion.

1   █████████████████████████████████████████████
2  ██████████████████████████████████████████████
3  ██████████████████████████████████████████████
4  ██████████████████████████████████████████████
5  █████████████████████████████████████████████
6  ████
7     ██████████████████████████████████████████
8  █████████████████████████████████████████████
9  ██████████████████████████████████████████
10 █████████████████████████████████████████████
11 ██████████████████████████████████████████
12 ████████████████████████████████
13    ██████████████████████████████████████████
14 █████████████████████████████████████████████
15 █████████████████████████████████████████████
16 █████████████████████████████████████████████
17    ██████████████████████████████████████████
18 ████████████████████████████████████████████
19 █████████████████████████████████████████████
20 ████████████████
21    ██████████████████████████████████████████
22 █████████████████████████████████████████████
23 █████████████████████████████████████████████
24 █████████████████████████████████████████████
25 ███████████████████████████████████████
26 _____
27 █████████████████████████████████████████████
28 █████████████████████████████████████████████

17-CR-533-EMC

This Court should reconsider its order with respect to these witnesses for two reasons.[6] First, the majority of these documents are law enforcement reports documenting interactions with civilian witnesses. Under Federal Rule of Criminal Procedure 16(a)(2), these reports are not subject to pretrial disclosure at all. *United States v. Fort*, 472 F.3d 1106, 1119 (9th Cir. 2007) ("Rule 16(a)(2) exempt[s] reports created by FBI agents (Form 302s) from disclosure."); *United States v. Jordan*, 316 F.3d 1224, 1227 n.8 (11th Cir. 2003) ("Under Rule 16(a)(2), therefore, the interview summaries made by the government agents were exempt from discovery."); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) ("We conclude that the district court did not abuse its discretion in refusing to conduct an in camera inspection of the FBI 302s.").[7]

Second, even for those documents for which Rule 16(a)(2) does not apply, this Court should exercise its discretion under Rule 16(d)(1) to delay production until three months before trial. The Court is authorized to prevent the disclosure of witness identities where such disclosure would place the witnesses in danger. For instance, in similar organized crime cases, the Fourth Circuit and D.C. Circuits have both approved of district court orders withholding witness identifies altogether. *United States v. Celis*, 608 F.3d 818, 829-33 (D.C. Cir. 2010); *United States v. Zelaya*, 336 Fed. App'x 355 (4th Cir. 2009).

At this time, the United States is not asking the Court for an order to entirely withhold the

[REDACTED]

---

[6] In addition to the materials subject to this motion to reconsider, the United States also has reports related to individuals who have been interviewed but who are not presently anticipated to testify as prosecution witnesses. Judge Beeler explicitly excluded these materials from her order requiring production. Transcript of August 14, 2020 Hearing at 78-79. To the extent those materials contain information that may be related to the charges at issue in the trial, the United States is aware of its *Brady* obligations. The United States' investigation continues, and if new information comes to light that changes the relevance of these individuals, the United States will either disclose materials related to them or will seek appropriate relief. In the same way, if the investigation develops new witnesses for whom no reports or other materials currently exist, the government will either disclose newly generated materials or will seek relief from the Court.

[7] Moreover, these reports are "always" Jencks Act statements "vis-à-vis the agent who draft[ed]" them, and may be Jencks Act statements of the interviewed witnesses if they "adopted or approved" the reports. *United States v. DeLeon*, 323 F. Supp. 3d 1285, 1292 n.4 (D.N.M. 2018). If viewed as Jencks Act statements of the authoring agents, then these reports are subject to disclosure only after the agent testifies.

witnesses' identities, but simply to delay production of materials that could be used to identify them until three months before trial. That timeline will balance the defense's need to prepare for trial with the legitimate safety concerns faced by anyone identified as a prosecution witness in this case. This is especially true given the limited volume of material at issue, and the productions that the United States has already made. It is also important considering the fact that most of the defendants are out of custody, living and operating in the same small community as many of these witnesses. With respect to trial preparation and the uncertainty posed by COVID-19, that uncertainty cuts both ways. If the October 2021 trial date is postponed (and defendant Jonathan Nelson has already stated an intent to move for a continuance), the early disclosure of these witness identities would potentially expose them to danger for a much longer period of time.

In its January 13, 2021 Order, this Court cited *United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008). There, the Ninth Circuit held that a district court's "inherent authority to manage its docket" permits it to order pretrial disclosure of the prosecution's witness list. *W.R. Grace*, 526 F.3d at 509. But *W.R. Grace* does not support the Court's order here. For one, *W.R. Grace* did not hold that district courts have the inherent authority to ignore Federal Rule of Criminal Procedure 16(a)(2). Nor could it. Neither did *W.R. Grace*—a prosecution of alleged violations of the Clean Air Act—involve the same safety considerations involved in a case like this one, where witnesses will testify that the defendants committed murder, sexual assaults, assaults, and robberies.

This Court also found that an enhanced Attorneys' Eyes Only protective order may be sufficient to address those concerns. As the Court is aware, the parties are currently litigating whether that order has functioned as intended. Regardless of how that litigation turns out, a protective order will be inadequate to protect the safety of prosecution witnesses. No protective order, regardless of how stringent its terms, is adequate to protect the lives of these witnesses. As courts have recognized in other contexts, a protective order "reduce[s] the likelihood of public disclosure" of protected information, but cannot "eliminate[] that risk." *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1278 (7th Cir. 1982). In other types of cases (such as civil litigation, where human lives are not usually at stake), a protective order may strike an appropriate balance between the need for discovery and the risk of improper disclosure. But in a violent crime case like this one, where the damage from improperly disclosed information may

include the serious injury or death of a civilian witness, no protective order—regardless of how strongly worded it is—is sufficient.

### IV. Conclusion

The defendants' need to conduct their own investigation is not the only concern for the Court, particularly in this case which involves victims of violent crimes. The safety of these five victims is of paramount importance. The defense teams have access, or will soon have access, to the vast majority of victim/witness information in the United States' possession. The United States is requesting to delay production of a very small percentage of the more than 60,000 pages of discovery already produced. Under the government's proposal, the defense will have access to the materials for these five witnesses three months before trial, which will provide ample time for preparation. For the reasons described above, this Court should reconsider its January 13, 2021 discovery order.

DATED: February 1, 2021

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney


 /s/
KEVIN J. BARRY
AJAY KRISHNAMURTHY
LINA Y. PENG
Assistant United States Attorneys