Pages **1 - 64**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
  VS.                         )          **NO. CR 17-0533 EMC**
                              )
JONATHAN JOSEPH NELSON, et    )
al.,                          )
                              )
          Defendants.         )
_____)

San Francisco, California
Wednesday, October 6, 2021

**TRANSCRIPT OF REMOTE VIDEOCOFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom videoconference.)


**For the Plaintiff:**          STEPHANIE M. HINDS
                              Acting United States Attorney
                              450 Golden Gate Avenue - 11th Floor
                              San Francisco, California 94102
                    BY:   **LINA PENG**
                          **AJAY KRISHNAMURTHY**
                          **KEVIN BARRY**
                          **ASSISTANT UNITED STATES ATTORNEYS**

**For Defendant Jonathan Joseph Nelson:**
                              LAW OFFICE OF JAI M. GOHEL
                              819 Eddy Street
                              San Francisco, California 94109
                    BY:   **JAI M. GOHEL, ATTORNEY AT LAW**
                          **RICHARD NOVAK, ATTORNEY AT LAW**

        **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              CSR No. 12219, Official Reporter

**APPEARANCES:   (CONTINUED)**

For Defendant Raymond Michael Foakes:
>                      BORO LAW FIRM
>                      345 Franklin Street
>                      San Francisco, California  94102
>            BY:  ALBERT J. BORO, JR., ATTORNEY AT LAW

For Defendant Russell Allen Lyles, Jr.:
>                      LAW OFFICES OF MICHAEL CLOUGH
>                      6114 LaSalle Avenue
>                      Suite 833
>                      Oakland, California 94611
>            BY:  MICHAEL W. CLOUGH, ATTORNEY AT LAW

For Defendant Jeremy Daniel Greer:
>                      LAW OFFICE OF RANDY SUE POLLOCK
>                      286 Santa Clara Avenue
>                      Oakland, California 94610
>            BY:  RANDY SUE POLLOCK, ATTORNEY AT LAW

For Defendant Brian Wayne Wendt:
>                      LAW OFFICE OF JOHN T. PHILIPSBORN
>                      507 Polk Street
>                      Suite 350
>                      San Francisco, California 94102
>            BY:  JOHN T. PHILIPSBORN, ESQ.

>                      LAW OFFICES OF MARTIN A. SABELLI
>                      740 Noe Street
>                      San Francisco, California 94114
>            BY:  MARTIN A. SABELLI, ATTORNEY AT LAW

For Defendant Russell Taylor Ott:
>                      LAW OFFICE OF ROBERT WAGGENER
>                      214 Duboce Avenue
>                      San Francisco, California 94103
>            BY:  ROBERT F. WAGGENER, ATTORNEY AT LAW
>                 MARCIA MORRISSEY, ATTORNEY AT LAW

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

**APPEARANCES:   (CONTINUED)**

**For Defendant Christopher Ranieri:**
                          LAW OFFICE OF JOHN G. WALSH, P.C.
                          63 Atlantic Avenue
                          Third Floor
                          Boston, Massachusetts 02110
                    BY:  **JOHN G. WALSH, ATTORNEY AT LAW**


**For Defendant Damien David Cesena:**
                          DURIE TANGRI LLP
                          217 Liedesdorff Street
                          San Francisco, California 94111
                    BY:  **GALIA AMRAM, ATTORNEY AT LAW**
                          **WHITNEY O'BYRNE, ATTORNEY AT LAW**

**For Defendant Brian Burke:**
                          LAW OFFICE OF ERIK BABCOCK
                          707 Washington Street
                          Second Floor
                          Oakland, California 94607
                    BY:  **ERIK BABCOCK, ATTORNEY AT LAW**

**For Defendant David Salvatore Diaz:**
                          LAW OFFICES OF JAMES S. THOMSON
                          732 Addison Street
                          Suite A
                          Berkeley, California 94710
                    BY:  **JAMES THOMSON, ATTORNEY AT LAW**

**For Defendant Merl Frederick Hefferman:**
                          LAW OFFICES OF JAMES BUSTAMANTE
                          1000 Brannan Street
                          Suite 488
                          San Francisco, California 94103
                    BY:  **JAMES BUSTAMANTE, ATTORNEY AT LAW**

PROCEEDINGS

1    <u>**Wednesday - October 6, 2021**</u>                          <u>**9:01 a.m.**</u>

2                    <u>**P R O C E E D I N G S**</u>

3                        ---o0o---

4        **THE CLERK:**  Court is now in session.  The Honorable

5    Edward M. Chen is presiding.

6        Calling Criminal Action 17-5333, United States of America

7    versus Jonathan Joseph Nelson; Raymond Michael Foakes; Russell

8    Allen Lyles; Jeremy Daniel Greer; Brian Wayne Wendt; Russell

9    Taylor Ott; Christopher Ranieri; Damien David Cesena; Brian

10   Allen Burke; David Salvatore Diaz; and Merl Frederick

11   Hefferman.

12       Counsel, please state your appearances for the record,

13   beginning with counsel for the Government.

14       **MR. BARRY:**  Good morning, Your Honor.  Kevin Barry,

15   Ajay Krishnamurthy, and Lina Peng for the United States.

16       **THE COURT:**  All right.  Good morning, Mr. Barry and

17   company.

18       **THE CLERK:**  Counsel for Defendant Nelson.

19       **MR. GOHEL:**  Good morning, Your Honor.  Jai Gohel and

20   Richard Novak for Mr. Nelson.  I believe Mr. Nelson is

21   listening on the Zoom as a public member.

22       **THE COURT:**  All right.  Thank you, Mr. Gohel.

23       **MR. CLOUGH:**  Good morning, Your Honor.  Michael Clough

24   on behalf of Mr. Lyles.  I don't think he is on yet, but he

25   will be and his time is waived for when -- until he gets on.

1    **THE COURT:**  All right.  Thank you.

2    **THE CLERK:**  He is on.

3    **MS. AMRAM:**  Good morning, Your Honor.  Galia Amram and

4  Whitney O'Byrne on behalf of Damien Cesena, who is present on

5  the Zoom.

6    And, Your Honor, I have to drop at 11, unfortunately, but

7  Ms. O'Byrne will be on for the duration.

8    **THE COURT:**  All right.  Well, hopefully, we'll all be

9  off by 11, but we'll see.

10   **MR. WAGGENER:**  Good morning, Your Honor.  This is

11 Robert Waggener, and Marcia Morrissey and I represent

12 Russell Ott.  Russell Ott is the seated to my left over here in

13 my office with me, so he is obviously in attendance for this

14 hearing.

15   **THE COURT:**  All right.  Thank you, Mr. Waggener.

16   **MS. POLLOCK:**  Thank you, Your Honor.  Randy Sue

17 Pollock appearing on behalf of Jeremy Greer, who is listening

18 to the proceedings.

19   **THE COURT:**  Thank you, Ms. Pollock.

20   **MR. WALSH:**  Good afternoon, Your Honor.  John Walsh on

21 behalf of Christopher Ranieri, whose presence is waived.

22   **THE COURT:**  Thank you, Mr. Walsh.

23   **MR. THOMSON:**  James Thomson on behalf of David Diaz,

24 who is participating via zoom, Your Honor -- or telephone.

25   **THE COURT:**  All right.  Thank you, Mr. Thomson.

PROCEEDINGS

1      **MR. BABCOCK:**  Good morning, Your Honor.  Erik Babcock

2   for Brian Burke, who should be joining, if he hasn't already,

3   and appearing, listening by zoom.

4      **THE COURT:**  All right.

5      Angie, do you see him?

6      **THE CLERK:**  I do not see a Brian Burke as an attendee

7   yet, Your Honor.

8      **MR. BABCOCK:**  He's attempting -- he will join and I'll

9   waive his appearance until he gets on, Your Honor.

10      **THE COURT:**  Thank you, Mr. Babcock.

11      **MR. BABCOCK:**  He just texted me.

12      **THE COURT:**  Okay.

13      **MR. BUSTAMANTE:**  Good morning, Your Honor.  James

14   Bustamante appearing on behalf of Merl Hefferman, who is also

15   present via the Zoom.

16      **THE COURT:**  All right.  Thank you, Mr. Bustamante.

17      **MR. PHILIPSBORN:**  Good morning, Your Honor.  Alex

18   McClure and John Philipsborn for Mr. Wendt, who is present by

19   video hook-up from the detention facility.

20      **THE COURT:**  All right.  Thank you, Mr. Philipsborn.

21      **MR. BORO:**  Good morning, Your Honor.  Albert Boro

22   appearing for Raymond Foakes, who is present in custody at

23   Santa Rita Jail, and is attending by Zoom.

24      **THE COURT:**  All right.  Thank you, Mr. Boro.  Welcome

25   to the case.

PROCEEDINGS

 1          **MR. BORO:**  Thank you, Your Honor.

 2          **THE CLERK:**  I believe we have everyone, Your Honor.

 3          **THE COURT:**  Okay.  All right.  Thank you, everyone.

 4     So no objection to proceeding by Zoom; correct?

 5          **MR. NOVAK:**  Correct.

 6          **THE COURT:**  Hearing none -- all right.  I hear none.

 7     We'll proceed.

 8          Let me first address the -- Mr. Thomson's status report.

 9          So I see that the Government has eliminated a number of

10     items that it has confirmed will not be used, but there was --

11     maybe I can get an update just to make sure I understand the

12     stipulation about the forensic download.

13          **MR. THOMSON:**  Yes, Your Honor.  With respect -- just

14     to go back to the line items that -- or the evidence that will

15     be used/not be used.

16          I just want to stress for the Court that, as of now, there

17     are 672 line items of evidence, which is not individual pieces

18     of evidence, but just the line items containing evidence that

19     have not been designated "not to be used" or in other words,

20     may be used at trial at this point in time.

21          **THE COURT:**  All right.  Is there any expected further

22     culling at this point or is this -- what's the Government's

23     view?

24          **MR. BARRY:**  Well, Your Honor just one, actually,

25     question.

**PROCEEDINGS**

1      I don't know if the 672 includes the pieces of computer

2   equipment because that was something that, you know, in the

3   thousands -- I think it was 1,088 or something like that,

4   which -- that Mr. Thomson identified or, you know, we actually

5   identified and then the defense said "Here are all the evidence

6   items we have, or line items we've got."

7      So I don't know if this 672 remaining include those, and

8   if they do, again, those aren't going to be actual, physical

9   pieces of evidence.  We're going to seek to introduce the

10   forensic extractions through -- hopefully, through stipulation,

11   but, you know, through a witness who says, you know, this is --

12   this was seized from this person on this date.

13      So if they -- if the 672 include those -- if that number

14   includes those devices, then it actually will be less.

15      But we don't think that there is going to be another great

16   culling.  You know, again, as we proceed through preparation,

17   get our exhibit list together and even, like, prep for trial,

18   stuff will, obviously, fall off because, you know, there -- we

19   might not need all these photographs, or all these pieces of

20   evidence.  But, right now, I think, the larger culling is done.

21   If there are significant things that we're not going to use,

22   we'll let the defense know.

23          **THE COURT:**  Okay.

24          **MR. THOMSON:**  The 672 items does include the computer

25   information.  It's a complete list of all the evidence that we

1    viewed at the various evidence viewings.  I don't know what

2    percentage of those are computer matters compared to physical

3    evidence.  But even if you take out those computer items, there

4    is still probably at least 500-and-some-odd line items of

5    evidence that either the Government is going to need to further

6    cull, or I just can anticipate a lot of in limine motions or

7    motions to exclude or preclude those items as, I guess, Group 1

8    gets closer to trial.

9              **MR. BARRY:**  So, Your Honor, what it shows is that

10   we've actually cut in half the issues for evidence.  And if

11   there is a particular piece of evidence the Group 1 defendants

12   object to, then why don't we litigate that now, you know, as we

13   have been trying to do as much pretrial litigation as possible

14   as far out as possible, you know.

15        If the -- this gets into the motion to continue the trial,

16   but the defense has resisted that at every turn; not

17   Mr. Thomson, but the defense in general.  We've worked quite

18   well with Mr. Thomson trimming the discovery with the searches

19   and everything, so -- but, yeah, if there are pieces of

20   evidence that the Group 1 defendants say, "Hey, this shouldn't

21   come in," then let's schedule those motions in limine right

22   now.  We don't have to do it this week, in terms of the

23   motions, but let's get a date to get them on file long before

24   the trial.

25             **MR. THOMSON:**  Your Honor, I'm not going to speak for

**PROCEEDINGS**

1   Group 1 with respect to how they want to handle that.  All I'm

2   saying is that there are those many items left, and I have

3   been, from the beginning, asking the Government to please give

4   us the actual list that they are going to use so that the

5   defense can then make a decision as to whether or not to try to

6   preclude or exclude them, or live with them, because they're

7   fine as evidence for the defense.

8        So Group 1 can address Mr. Barry's comment about

9   individual items.  I'm just letting the Court know that there

10  is that many line items left, and the Government has actually

11  reduced it by 38 percent, not by half.

12          **THE COURT:**  Right.

13          **MR. THOMSON:**  And that has been because we have been

14  constantly on this in terms of trying to get the list up.  So

15  that's as to item one.

16       As to item two --

17          **THE COURT:**  Let me just, before we leave that, just to

18  preview, we're going to want to build in -- I'm going to want

19  to build in, number one, a time when the Government will have

20  to identify its exhibit list so that there can be motions in

21  limine.  We're not going to have motions in limine in the

22  blind.  So that's got to be done early too.

23       And I'm all for doing this not two weeks before trial.

24  This is going to be done in advance of trial.  So we'll figure

25  that out.

1              **MR. THOMSON:**  Okay.

2              **THE COURT:**  Thank you.

3              **MR. THOMSON:**  As to item two, it brings up the notice

4     of inability to comply with joinder that I filed in item three

5     on the status report.

6         I can't speak to the stipulations because I have not seen

7     them.  I don't know how many stipulations were done with

8     respect to the forensic download of a particular item.  So

9     maybe Group 1 can speak to them.

10        And if we continue to be boxed out of that discussion,

11    then, I guess, that's something that Group 1 has to do with

12    the Court without the rest of counsel being involved, which I

13    object to.  But I have no comment on number two, other than to

14    let the Court know that I've been informed that some

15    stipulations were provided to Group 1 counsel.

16             **THE COURT:**  Okay.  And with respect to your third

17    item?

18             **MR. THOMSON:**  Yes, Your Honor.

19        I mean, it's gotten to the point -- and, you know, I

20    understand there is court orders in place and everything else.

21    And I'm not trying to do anything except to notify the Court

22    that this is getting extraordinarily difficult for us -- I'll

23    speak for all non-Group 1 counsel -- to feel like we're really

24    participating in the case at this point.

25        Because there are -- I mean, we don't have motions to

1   continue the trial.  We had one document that was filed by

2   Mr. Wendt's team that gave us part of it, but the memorandum

3   was filed under seal.

4       We don't know whether there was another motion to continue

5   trial filed or not.  The Government alludes to a motion --

6   another motion to continue trial in its pleading that it filed,

7   which some of us got; perhaps all counsel got that.

8       But we don't know whether there was a third motion to

9   continue trial filed.  We don't know whether there has been an

10  opposition to some of the co-conspirator log.  We don't know

11  whether there has been replies to motions.  And for some

12  reason -- and I'm not really sure about this -- we don't even

13  know the status, kind of, of the jury record motions, which

14  have always been kind of open to everyone.  I mean, since *Test

15  versus United States*.  So we're just -- we're kind of at a loss

16  as to what to do.

17      And as stipulations get decided without Group --

18  non-Group 1's input and other matters get litigated, no one is

19  going to keep track of this stuff for the non-Group 1

20  defendants.

21      I'm sure -- you know, the Court is not going to keep track

22  of all the things that were decided that may have affected

23  non-Group 1 folks.  The Government is not going to do that.

24  And certainly defense counsel, they got enough to do that they

25  are not going to be doing that.  We're going to end up at the

**PROCEEDINGS**

1    end of this trial without knowing what has been litigated and

2    how to proceed.

3        And I just don't, my request is that we be given

4    everything as well as Group 1 so that we can perform our part

5    of the JDA, and that we can assist Group 1 clients and counsel

6    with respect to issues that may come up, you know, that relate

7    to our particular client or that relate to other aspects of the

8    case, and that we be allowed to assist them, and that we be

9    allowed to benefit from what is going on in the case in terms

10   of the litigation.

11       I know that there is generally just a whole host of issues

12   with respect to some of the latest discovery that has been

13   produced, some of which we get, some of which we don't get.  I

14   don't know what we don't get, but I know it's creating a

15   bottleneck of sorts between the discovery coordinator and the

16   Government's discovery person.  And they are working on it.

17   I'm not saying anybody is not working on it.

18       But we don't even know what's happening.  So for us to be

19   kind of put on the outside and not know what's happening is

20   really creating a difficulty for the non-Group 1 defendants,

21   and I think it's also harming the Group 1 defendants because

22   they are not getting our benefit.

23       I fully respect an attorneys' eyes only order.  We've

24   lived with them all the way through.  There are individuals

25   that also don't think that we should have attorneys' eyes only

1    on some stuff, but I'm not asking about that now.   I'm just

2    asking to be given everything that Group 1 has so that we can

3    coordinate and work together in getting this case done.

4         So that's my request.

5              THE COURT:  All right.  Let me hear the Government's

6    response.

7         It seems like there is sort of two buckets here.  There is

8    stuff that has the AEO materials that's confined to Group 1

9    counsel; that's sort of one category of stuff.  And then we

10   have sort of just motions work and other things that may or may

11   not pertain to the AEO Group 1 counsel issue.

12        What are your -- what's the Government's view about

13   sharing these or at least some of these documents, pleadings

14   with the rest of the counsel?

15             MR. BARRY:  Well, with respect -- thank you, Your

16   Honor.

17        With respect to the first bucket, I think that should be

18   and should remain cabined with the Group 1 defendants because

19   of the witness safety issues; you know, there are some

20   significant issues there.  The -- so that, that should be in

21   place.

22        With respect to the non-AEO materials, if there are issues

23   that affect the non-Group 1 defendants, the Government has

24   given them our pleadings.  Like, the motion to continue the

25   trial, we gave everyone our opposition because it affects

1    everyone.

2         But, you know, the motions in limine, motions, you know,

3    stipulations, the Court's rulings on evidence, the Court's

4    rulings on particular pieces of evidence for this trial, you

5    know, aren't necessarily going to be law of the case.

6         You know, if the Group 1 defendants agree to stipulate to

7    some foundational issues in terms of the electronic devices

8    that, you know, this image is a correct forensic image of what

9    was seized on this date, that will speed up the trial for

10   Group 1.

11        If the group -- if the Group 2 defendants, for whatever

12   reason, don't want to agree to that, that's on them; but they

13   are not going to be bound by that.

14        Evidentiary rulings that the Court makes in Group 1,

15   you know, we will -- there may be a reason for the Court to

16   change its mind, and the Group 2 defendants can bring that up

17   at that time.  But rulings that the Court is making now with

18   respect to Group 1 won't necessarily affect the remaining

19   defendants because they're -- they will have the opportunity to

20   conduct their trial the way they want.

21        **THE COURT:**  I guess my question is:  What's the

22   opposition?

23        I mean, you say, well, they may not need it, but what's

24   the harm if -- aside from the AEO witness safety stuff, what

25   harm is there in -- so that, you know, by disclosing it, we

1  obviate the question whether it will or will not -- and I don't

2  want to get into the thing about what's useful and what's not.

3  I don't know if that's for me to decide.

4      But what's -- what's the danger in disclosing, other than

5  the witness safety stuff?

6      **MR. BARRY:**  Yeah.  There isn't a witness safety

7  danger.  It's more of an administrative issue for the

8  Government.  Frankly, it's easier to deal with three defense

9  teams than it is to deal with 11.

10      And, again, not just the administrative issue, but, you

11  know, it doesn't affect the Group 2 defendants -- like the

12  trial scheduling issues on the other -- except for trial

13  scheduling issues.  But the evidentiary rulings, the motions in

14  limine, even the jury instructions -- you know, as I indicated,

15  I think, in back in December, you know, we want to get some

16  litigation on critical jury instructions, like Pinkerton.

17      If the Court says, you know, these are the forms of the

18  instructions for trial one, and we go to trial, the jury is

19  instructed on those, Group 2 can say:  You know what,

20  Your Honor, we think you got it wrong in this respect and we

21  want these instructions.

22      So it's not necessarily harm.  It's more of an

23  administrative issue.

24      Oh, and we're -- we don't oppose --

25      **THE COURT:**  And the administrative burden is simply

1    copying -- serving the other -- other sets of counsel, the

2    other eight counsel?

3         **MR. BARRY:**  Yeah.  And we have actually done that,

4    Your Honor.

5         We've given -- you know, as I indicated, we have given the

6    materials pertaining to the trial group -- I'm sorry, the trial

7    scheduling to Group 1.  And, in fact, I think we gave

8    Mr. Thomson the stipulations he was talking about, I think we

9    gave those to him on Sunday.

10        So, yeah, when it affects them, we're happy to include

11   them, but --

12        **THE COURT:**  All right.  What's -- go ahead.

13        **MR. THOMSON:**  Your Honor, I don't think -- I may be

14   wrong, but the Government gave us notice of the fact that the

15   stipulations had been given to Group 1 counsel.  I don't recall

16   there being an attachment where the actual stipulations were

17   there.  But if that's the case -- I mean, I'll check, and if

18   that's the case, that's fine, we have those.

19        But, regardless, these are -- I mean, if we're just

20   talking about the pleadings now, these are ECF documents of

21   some sort.  It doesn't -- it's not an administrative burden to

22   hit -- serve all, versus serve three.  I mean, that just

23   doesn't make sense.

24        And the Court is going to be informed by this litigation

25   in a way in which we're not going to know about.  So it's one

**PROCEEDINGS**

1   thing, we get the ruling and the Court -- we get the final

2   packet of instructions, say, for example, that the Court has

3   issued in the trial one -- Group 1.  Okay?  We get that.

4       We don't know what litigation was brought to get those

5   final packets together, so we're not going to have the benefit

6   of what Mr. Waggener and Mr.--

7               **THE COURT:**  No.  I understand your point.

8               **MR. THOMSON:**  Okay.

9               **THE COURT:**  I understand your point.

10      What I want to find out is whether there is any opposition

11  from Group 1 counsel.

12              **MR. PHILIPSBORN:**  Your Honor, Philipsborn for Wendt.

13      Just on two matters, and I certainly invite my old friend,

14  Mr. Thomson, to correct me.

15      One thing that he mentioned was pleadings related to jury

16  challenges.  And I've just checked the e-mails, all of the

17  pleadings that I can tell you the joint defense lawyers filed

18  went to all defense counsel.

19      It's true they are filed under seal, but that's a separate

20  issue.  They are protected from public view because of court

21  requirements, but I'd -- so it may be that there are some items

22  that Mr. Thomson is specifically concerned about insofar as

23  those pleadings are concerned, that I certainly welcome his

24  information about.

25      And it is true that the Court has insisted that certain of

1    its records be maintained under seal.  But, again, I got

2    permission to disseminate those that were sent to me, to other

3    counsel.  So I just want to assure colleagues that they have

4    what their defense representatives have sent out.

5        And on the stipulation issue -- and, again, this is just a

6    respectful point of information for colleagues.  And speaking

7    only for Team Wendt, we did receive a proposed stipulation on

8    electronic items.  I have no knowledge of that particular

9    suggested stipulation being acted on.  And the -- the Wendt

10   defense is going to be replying to the Government, but not in

11   the form of a -- of an acceptance of the stipulation as it's

12   currently framed.

13       **THE COURT:**  Do you see a reason -- but now that --

14   those communications are between Group 1 counsel and

15   the Government, correct, not copied to other counsel?

16       **MR. PHILIPSBORN:**  Your Honor, on the matter of the

17   stipulation specifically, that's correct; as far as I can see

18   by looking at the stipulation, as I am now.

19       **THE COURT:**  All right.  So from what you've seen, do

20   you have any objection or do you see any reason that, although

21   they are not involved in the discussions and the negotiations,

22   but, nonetheless, they are in the case, why other counsel

23   should not be privy?

24       **MR. PHILIPSBORN:**  Your Honor, again, speaking only for

25   Mr. Wendt, were I in Mr. Thomson's position, I would be making

1    exactly the same objections he is.  And I, personally, don't

2    see the reason that they are not privy to information, with the

3    sole exception that under -- that there are situations in which

4    a defendant will be filing information under seal for

5    correction -- I'm sorry -- for consideration by the Court,

6    usually ex parte, which, obviously, would not be served.

7         But everything else, as far as I'm concerned and Team

8    Wendt is concerned -- without having checked in with my

9    esteemed co-counsel, Ms. McClure -- but I don't see us having

10   any objection to that.

11        And I think it would make more sense.  Because, as

12   Mr. Thomson points out -- and Mr. Novak before that, at prior

13   hearings -- there are instances in which we're actually trying

14   to get some assistance from our co-counsel on certain matters,

15   but we are limited by the fact that we're not able to talk

16   about certain contents of pleadings because they're,

17   ostensibly, filed under seal.  And so we're -- so I'm sorry for

18   rambling.  No objection.

19        **THE COURT:**  Let me ask you -- let's take some, for

20   example, here.

21        The motion to continue trial, or the motions to continue

22   trial, would it be your view that some of that, like the

23   memorandum of points and authorities, should be shared, but not

24   the declaration?  What's your view of that?

25        **MR. PHILIPSBORN:**  Your Honor, on that specific matter,

**PROCEEDINGS**

1    for Wendt, for Team Wendt, the only reason that the memorandum

2    is under seal is that it makes reference to AEO material, and

3    so that's the reason that it's under seal.  Otherwise, we

4    wouldn't have any objection to the dissemination of that.

5        The declaration that was filed in support makes reference

6    to very specific privileged matters and it was filed so that

7    Your Honor would review it and no one else.  We would have

8    objections to the dissemination of that particular item.

9        But on all of the pleadings that we've filed to date that

10    have been kept from our colleagues, that's the only one I can

11    think of immediately that the Wendt defense has filed that I

12    think we would have an objection to disseminating; otherwise, I

13    think our colleagues are entitled or should be getting the

14    others.

15        **THE COURT:**  And that would include -- I'm looking at

16    this list here -- defense expert disclosures, motion to exclude

17    co-conspirator statements, motion to suppress?

18        **MR. PHILIPSBORN:**  Your Honor, again, speaking for the

19    Wendt defense specifically, I don't see why those are currently

20    not being disseminated.

21        **THE COURT:**  All right.  Let me ask other Group 1

22    counsel if anybody has a different view.

23        **MS. MORRISSEY:**  Your Honor this is Marcia Morrissey

24    speaking.

25        **THE COURT:**  Yes.

**PROCEEDINGS**

1    You just muted yourself.  Okay.  There you go.  No, back

2    the other way.

3        **MS. MORRISSEY:**  All right.  The motions to suppress do

4    refer to unredacted copies of search warrants.  And I realized

5    that when I -- you know, upon filing it, that, having done

6    that, I had made a document that I could not share.

7        **THE COURT:**  Yeah.  All right.

8        With the exception of something like that, do you see any

9    reason not to share pleadings?

10       **MS. MORRISSEY:**  No, Your Honor, none.  I would prefer

11   being able to share pleadings because I think it is to

12   everybody's best interest.

13       **THE COURT:**  Okay.

14       **MR. WAGGENER:**  Your Honor, this is Bob Waggener.  I

15   have a point to raise.

16       In terms of the stipulation, Mr. Krishnamurthy gave -- or

17   sent out to Group 1 a proposed stipulation, on September

18   the 30th regarding the electronic device that sets out about 50

19   different devices where he is seeking a stipulation in terms of

20   the imaging, whatever.

21       I have no problem, conceptually, with sharing that with

22   the other co-counsel in the case.  I note -- and I think there

23   is a real reason to do that because, for instance, one of the

24   devices would be a telephone of a co-defendant who is not in

25   Group 1.

PROCEEDINGS

1      On the other hand, I'm looking at the stipulation now, and

2 there is also identification of individuals that may not -- may

3 be subject to AEO protections or Group 1, walled-off disclosure

4 issues, in terms of material that we have received that the

5 other eight defendants have not received.

6      So there is, I understand, some level of sensitivity also.

7           **THE COURT:**  Well, all right.

8           **MR. THOMSON:**  Your Honor, if I might.

9      I will check with Mr. Philipsborn about the jury

10 disclosure stuff.  And if I -- if that was wrong and we've

11 received that, then I apologize to the Court.

12      But -- and I appreciate whatever the Court can do in terms

13 of giving us pleadings and stuff, but given what Mr. Waggener

14 has just said, what Ms. Morrissey just said, and actually both

15 of those raise the point of:  I do not understand why this

16 group of attorneys cannot be given all of the stuff that

17 Group 1 attorneys are given, even if it is AEO.

18      Because we will keep it AEO.  It doesn't hurt us to have

19 it even -- at the same time that Group 1 gets it.  We're not

20 going to do anything with it.  So it's going to be secure just

21 as if Group 1 got it in secure.

22      And if that's going to create then, you know, a

23 stipulation, but the stipulation is not going to have all the

24 names it; or we're going to get a motion to suppress, but the

25 motion to suppress doesn't have all the names it and stuff -- I

**PROCEEDINGS**

1   really do ask the Court to reconsider its ruling on the -- with

2   respect to dividing Group 1 from the other defendants, and that

3   we be provided all information at the same time under whatever

4   strict AEO provisions the Court wants us to follow, and we will

5   follow them.

6           **THE COURT:**  All right.  Your response, Mr. Barry?

7           **MR. BARRY:**  Thank you, Your Honor.

8      Actually, you know, the timing of Mr. Thomson's request is

9   unfortunate for the strength of his argument, because I don't

10   know if the Court's division of Group 1 versus non-Group 1

11   defendants was before or after Judge Kim's findings.  But I

12   think the reason that the Court restricted materials to Group 1

13   is to preserve and address those -- you know, those witness

14   safety concerns, and the problem within it, leaks, either

15   deliberate or inadvertent.

16      So I think the Court's -- the basis for the Court's ruling

17   was correct.  It was strengthened by the recent order to show

18   cause findings, and we think it should stay in place.

19      If the Group 1 defendants want to share materials, I

20   think, just like Ms. Morrissey and Mr. Waggener identified, if

21   there are materials that they need to excise, then they know

22   what that is, and they can do that.

23      But I think the Court shouldn't reconsider its careful

24   ruling in deciding who gets what and -- because the reasons for

25   that have only become more stark.

 1          **THE COURT:**  Well, let me ask you:  Other than the OSC

 2   proceeding, and we'll call it "the incident" about which that

 3   proceeding was held, does the Government have any -- any

 4   evidence that there has been a breach of AEO by current

 5   counsel?

 6          **MR. BARRY:**  Other than -- no, we do not.

 7          **MR. CLOUGH:**  Your Honor, can I --

 8          **THE COURT:**  Yeah, briefly.

 9          **MR. CLOUGH:**  -- just add quickly.

10      One, I, obviously, strongly endorse Mr. Thomson's

11   position.

12      To be honest with you, having followed this closely, I'm

13   actually confused as to what the restrictions are, because I

14   didn't think the Court's orders had actually created a

15   restriction that made it impossible to share pleadings.  And to

16   the extent that there is a problem with pleadings, those

17   problems could be solved, it would seem to me, in most cases,

18   by redactions.

19      So I've been confused by the fact that we haven't been

20   served with all of these pleadings.  I share all of

21   Mr. Thomson's views.

22      I also, obviously, have strong views of the AEO, and I

23   think that needs to be litigated later.  But I don't think we

24   need to go into that now.

25      Right now, I think the main thing is we need to know what,

PROCEEDINGS

1    actually, the Court's rulings are on the question of pleadings.

2    Because Mr. Thomson is right, there is no way we can assist

3    Trial Group 1 when we don't even know what's being litigated

4    and we don't know what the evidence is that might affect our

5    clients.

6         **THE COURT:**  All right.

7         Here is what I want to do --

8         **MR. BARRY:**  Sorry, Your Honor, just to clarify one

9    point.

10        Actually, there was, actually, a breach of the AEO in

11   addition to the OSC, in that, one of the -- actually, one of

12   the counsel for Group 1 publicly identified someone in open

13   pleadings who was named in AEO materials.  The details were

14   shared of what this person told investigators and who this

15   person was, identified by name.

16        So the Government views that as a breach.

17        **THE COURT:**  Okay.  So here is what we're going to do:

18   I think the reason for the AEO Group 1 restriction was just

19   risk analysis, that the more people that have sensitive witness

20   safety sensitive stuff, whether inadvertently or however, that

21   increases the chances.  And the need for it is not urgent yet

22   because, you know, the trial of the other non-Group 1

23   defendants is a bit aways.

24        On the other hand, there will be -- and there has already

25   been some indication of a need to have exceptions to that for

1    Group 1 defendants in their preparation.  And that's been done,

2    and I understand that's to be done on a kind of case-by-case

3    basis.

4        But I don't see and I, frankly, I agree with Mr. Clough.

5    I'm not sure, when I issued an order, it was about witness

6    safety stuff.  I didn't -- maybe it was overabundance of

7    caution I'm not sure how we got to this point where pleadings

8    apparently, maybe, you know, just to stay clear of the line,

9    were not being shared.

10       I don't see a reason why pleadings are -- shouldn't be

11   shared, so long as witness safety stuff -- at least for now --

12   and I may lift that AEO, we'll see -- as long as there is

13   redactions.  So what I want is -- I want the Group 1, somebody

14   from the Group 1 defendants to look at or, you know, to look at

15   these documents that apparently have been withheld and figure

16   out which or what portions can be released.

17       It sounds like the vast majority can be released with the

18   exception, for instance, of the declaration in support of the

19   motion to continue trial, maybe some redactions of certain

20   search warrant references, et cetera, et cetera.  But it sounds

21   like the vast majority of this stuff can be and should be

22   released.

23       And so I would like the group -- somebody from the Group 1

24   defendants to -- to reach understanding with the Government

25   that -- exactly what it is that can be released and arrange for

1    that release.  Right now, we're -- looks like we've got -- I

2    don't know -- 10 documents or something.

3        And going forward, I think that the general presumption

4    should be all defendants should receive all pleadings, unless

5    it involves the -- what we've been referring to as witness

6    safety, super AEO, the AEO Group 1 issue.

7        I understand there is an interest in lifting that totally.

8    And, obviously, that would be in some ways simpler because then

9    we don't have to do redactions and things.  But I am sensitive

10   to the risk to witness safety -- just when there is multiple

11   and multiple numbers of dissemination -- when there is not

12   quite the need yet, I don't see it.

13       And, frankly, once we go to trial, this may moot all the

14   AEO stuff.  I mean, you know, we're going to have open trial.

15       So -- but, I think it's fair.  I did not intend -- and if

16   I misspoke or if there is something in my ruling that indicated

17   that, then I want to clarify now, that there is no reason for

18   pleadings, as a general matter, for those not to be shared with

19   counsel.

20           **MR. GOHEL:**  Your Honor, just for the record, for

21   Mr. Nelson just -- our position is that we have no objection to

22   sharing pleadings; we have no objections to sharing AEO.  In

23   fact, we believe that the inability -- and I know it's not for

24   this -- for today, but the inability to share AEO materials

25   with our co-counsel is actually impeding our ability to prepare

**PROCEEDINGS**

1  for trial.

2       **THE COURT:** I understand that. And that's why I say,

3  at the very least, we're going to make case-by-case exceptions.

4       So if you need to talk to Attorney X because one of these

5  overt acts or one of the enterprise pieces of evidence, and you

6  need to get some information, I understand that that's one of

7  the issues that's floating out there.

8       **MS. McCLURE:** And, Your Honor, this is Alex McClure

9  for Mr. Wendt.

10      I would just add to Mr. Gohel's comment that I think in

11  putting the burden on the Group 1 defense counsel, who are

12  really trying to sort through a lot of discovery snafus and

13  issues, trying to prepare for trial, to have us then have to

14  look at our pleadings, try to do a side-by-side comparison of,

15  say, a search warrant affidavit that now the Government has

16  designated as "Group 1 only," for us to figure out what needs

17  to be redacted and what has not been given to the rest, I think

18  is an unfair burden.

19      I would ask the Government --

20      **THE COURT:** Let me put this way: I'm going to put the

21  burden on the Government to identify what it thinks needs to be

22  redacted for witness safety reasons, but there's some things

23  that you all may want to redact, as Mr. Philipsborn indicated

24  because it has privilege stuff that you may not want.

25      So each side will get to indicate what it thinks should be

**PROCEEDINGS**

1    redacted.

2          **MS. McCLURE:**  That's true, Your Honor.  I know of one

3    declaration that we believe is -- that is privileged, and would

4    need trimming.  But everything else, Your Honor, is really

5    the Government's designation.

6          **THE COURT:**  All right.  Then --

7          **MR. BARRY:**  This is Kevin Barry, Your Honor.

8       The point -- the easy refutation of that is the defense

9    knows what it's citing.  They know -- if they are citing the

10   completely unredacted materials, they know where it's coming

11   from and they know what it is.  So they're aware of what they

12   are citing, and so the burden should be on them if they want to

13   share it, in contravention to the Court's order.

14         **THE COURT:**  Well, my order now is that these documents

15   will be released, but the Government will have a chance --

16   these are the handful of documents at this point, and I don't

17   want it to grow, but these documents should be released.

18   The Government should have a chance to indicate what it wants

19   to redact, and defense counsel should have an indication of

20   what it wants to redact.  And after that's done, it will be

21   released.

22         Going forward, the directive is:  Everybody shares, unless

23   one party or the other thinks it should be redacted.

24         Most often, it will be the Government because it's going

25   to be -- you know, potentially AEO/witness safety matters.  But

PROCEEDINGS

1    that's --

2         MR. CLOUGH:  Your Honor, I appreciate the Court's

3    order there.  I just want to just address, briefly, one thing.

4         There is an issue that keeps getting floated that never

5    gets totally addressed and that is the idea that Trial Group 1

6    can make case-by-case selective requests to be able to admit

7    stuff to Trial Group 2.

8         I think that's a very, very problematic position because

9    having Trial Group 1 decide what might be relevant for my

10   defendant client to know and, therefore, give me what they

11   think is relevant, as opposed to other material, creates an

12   obvious problem.

13        I don't think we need to go into that now, but I think

14   that's an issue that I, for one -- and I think Mr. Thomson has

15   already alluded to some similar things -- are going to ask

16   the Court to address in more detail.  Because I think in the

17   final analysis, it is simply not possible for non-Trial Group 1

18   defendants to cooperate fully with Trial Group 1 in an

19   investigation when they don't know the full scope of the

20   evidence that's out there.

21        THE COURT:  Well --

22        MR. THOMSON:  Your Honor, as to these 11 items --

23   Item I being juror records, which I think Mr. Philipsborn has

24   indicated is not really relevant.  As to these 11 -- now it

25   would be 10 items, could we get a due date for those to be

**PROCEEDINGS**

1    provided to us?

2        And then the only other thing that I ask is, anything else

3    that has been filed under seal or by this method that is not

4    included on this list, but that was filed up to today's date be

5    included as well, because we don't know if something else has

6    been filed.  I just got these items off of the Court's, you

7    know, minute orders, you know, trying to track when they were

8    due or not.

9        I don't know if, you know, one of Group 1 defendants filed

10   some other document, or the Government filed another document.

11       So I would ask that the Court's order be that these 10

12   items, plus anything else that has been filed under the same

13   rubric, be provided to us by a date that the Court deems

14   appropriate.

15           **THE COURT:**  All right.  That's fair.  Let's set a

16   timeline of three weeks.

17           **MR. THOMSON:**  Thank you very much, Your Honor.

18           **THE COURT:**  All right.  Let's get to the continuance

19   matters.  And I have to be careful because, obviously, some

20   things are not public.  But the gist of it, I think, is public

21   and that is because of -- I'll call them -- snafus or delays

22   without necessarily attributing any ill intent, but there has

23   been problems in the release of materials and logistical

24   problems, at least as I understand it, from the perspective of

25   Mr. Wendt's counsel and, I guess, everybody else joins in that;

1    that that is has delayed their ability to investigate, to

2    conduct their investigation.  And that we're essentially about

3    two months, two and a half months behind where they thought

4    they would have been had it not been for some of the delay in

5    getting all this stuff, which was supposed to have been out

6    I guess, in July.

7         Is that right?

8         Maybe I should get an update as to whether this Bates

9    stamp coordination matter has now been resolved.  Maybe that's

10   the first question.

11        Where is that at, at this point?

12        **MR. WAGGENER:**  This is Bob Waggener.

13        I'm probably in the best position to speak to that because

14   I talk on a daily basis to the defense discovery coordinator.

15        And as stated in Mr. Wendt's paper and some papers I filed

16   as well that there have been some significant problems in terms

17   of the Group 1 obtaining unredacted materials.  There were

18   Bates stamp issues.  There were watermark issues, inability to

19   have text recognition of documents that were produced.

20        So it's been a tough road, but we've -- we made some

21   progress.  We now have, of the 70- -- call it the 75,000 pages

22   of Bates numbers, we now have what the Group 1 is calling a

23   pristine copy of that; meaning that we have -- everything has

24   been unredacted, it has a uniform Bates system stamping that

25   was consistent with the prior Bates stamping.

1      It is -- that was just obtained, achieved two days ago.

2   Now, we're in the process of coding that, organizing it,

3   indexing it, whatever, which is now another substantial task in

4   the hands of the discovery coordinator.  So we're moving

5   forward, but it is -- has been a problem.

6      And there are some quality control issues in terms of now

7   that -- basically we got five or six different productions,

8   which then had to be combined into another production in order

9   to clean it all up.  And now we're combining the newer

10  materials such that we have -- we're up to a Bates, like,

11  90,000 pages of Bates stamped stuff.

12     And now we just received an additional 30,000 pages --

13  well, 50 gigabytes -- a 50-gigabyte hard drive.  It has 42

14  gigabytes of data and eight gigabytes of documentary data.

15  Roughly, that's about 30,000 pages.  So now we're going to be

16  up to 125-, 130,000 pages of Bates stamped stuff.

17     So we're processing it all.  It's a task.  And then

18  organizing it.  Some of that, the latter group of -- set of

19  materials, that 50 gigabytes, is going to all counsel.  We,

20  literally, just got the 30,000 pages distributed to all counsel

21  yesterday.  The 42 gigabytes of data has yet to be distributed,

22  and that's going to require hard drives out to the discovery

23  coordinator.

24     So it's a long-winded discussion on that.  We could go

25  into further detail on it, but it is a work in progress.  We're

**PROCEEDINGS**

1    making progress.  But it's also a matter of that the processing

2    has to be done such that the lawyers -- it hasn't gotten to the

3    lawyers in the sense of getting it coded, cross-referenced,

4    indexed material for us, for our investigator such that we can

5    be comfortable that we have everything that is -- has been

6    produced that is relevant so we can make decisions in terms of

7    how we prepare our defense.

8         So that's where we are.

9         **THE COURT:**  There is reference also to tape-recorded

10   interviews, phone records from certain operatives that -- that

11   remain to be produced.  Do you -- are you aware of that

12   situation?

13        **MR. WAGGENER:**  We recently got a distribution, on

14   September 28th, that was a -- that's a -- that's some new

15   material that included a four-and-a-half-hour recorded

16   interview of an individual.  Then there are a number of phones

17   that are part of this that 50-gigabyte production that I just

18   talked about.  There is a couple of phone downloads in there

19   that we had not gotten our hands on yet.  There are other

20   downloads that we are still processing.

21        So, yeah, there is a significant amount of data and

22   Cellebrite reports, extractions, spreadsheets having to do with

23   devices that, again, is being processed and organized for

24   Group 1.

25        **THE COURT:**  All right.  Let me hear from defense

1  counsel why, although there has been some delay, there is still

2  nearly three months left before the scheduled trial date, why

3  that's not enough time.

4       **MR. NOVAK:**  Your Honor, this is Richard Novak.  I'll

5  jump in at this moment, unless somebody else wants to go first.

6       I think, in addition to what Mr. Waggener is managing with

7  great calm, although it is a lot of chaos, I think what

8  Mr. Nelson tried to convey in his motion to continue is that

9  it's really, really difficult for us to actually zero in on the

10 materials from these productions that we need to utilize in

11 order to prepare to meet all of the overt acts, given the chaos

12 of those materials.

13      And while I'm not trying to jump to another pleading that

14 Mr. Nelson filed under seal a couple of days ago, you know, the

15 identity of witnesses is still, for the first time, being

16 disclosed.  And their statements are still being disclosed for

17 the first time.  And we got a disclosure of what I would call a

18 very significant potential insider witness, literally, days

19 ago.  I think it was September 20th, maybe even later.

20      And Mr. Gohel did file something on our behalf regarding

21 that.

22      So it's not just receiving the materials, but it's -- as

23 Mr. Waggener says, it's organizing them efficiently so you

24 don't have six trial attorneys combing through thousands of

25 pages to figure out what is what.  We have to rely on our

1    paralegals and our coordinating -- discovery coordinator to

2    make those materials available to us in an efficient way.

3         And then what is currently the 90-day date and obviously

4    we've raised a concern that that's insufficient time, we can

5    then begin to review those very voluminous materials not, only

6    with Mr. Nelson for the first time, but with codefendants, if

7    there -- codefendants' counsel -- which raises the concern that

8    Mr. Clough addressed -- and third-party witnesses.

9         And as I pointed out in our pleading, which is under seal,

10   many of the overt acts that the Court decided the Government

11   would be permitted to present at trial do not involve

12   Mr. Nelson.  He may, hypothetically, have been a member of the

13   Sonoma Charter during that time.  He may have even,

14   hypothetically, been present at the time of the alleged

15   incident, but according to the Government's representations, he

16   wasn't present.

17        So we don't have -- even within the small circle of

18   Mr. Nelson and his defense team -- personal knowledge as to

19   those many events, at which -- which necessitates a huge amount

20   of interviewing witnesses, investigating the locations of

21   people who we may not be aware of at this time.

22        I mean, Your Honor knows this.  It is a little bit -- it's

23   a little bit like an onion, when one can actually begin to

24   discuss matters that need to be investigated with a client, and

25   with third parties, because it always leads to layers of very

1   relevant and necessary inquiry, and investigation.

2       And so not only is the -- to summarize, not only is the

3   chaos, if I may, and the late production of usable discovery

4   delaying our ability to prepare for that a 90-day window, but

5   what can happen in that 90-day window realistically, is only a

6   fraction of what we believe needs to be able to get done.

7       And so not only do we need to move the trial date out so

8   there can be further preparation for that window -- if that

9   makes sense; if it doesn't, I'll restate it better -- but we

10  need, as I've -- as we wrote in our motion to continue, we need

11  that 90-day window to be expanded.  And that's why we've asked

12  for that additional 45 days, which I think is very reasonable

13  under the circumstances.

14      And as Your Honor said, once this case goes to trial, the

15  whole AEO regimen is moot.  So if -- but for the incident, as

16  Your Honor describes it, in this OSC and an errant statement in

17  a pleading by somebody, there have been no problems brought to

18  the Government's attention concerning violation of the AEO, and

19  we are, literally, within a few months of trial one way or the

20  other.

21      You know, I think that's why the date needs to be moved

22  and the AEO lift needs to be moved, and I think it's very

23  modest that the Trial Group 1 proposal is an additional

24  45 days.  I mean, 45 days is 45 days, but as Your Honor knows,

25  in trial preparation, 45 days goes very quickly.

 1          **MR. GOHEL:**  Your Honor, can I add quickly to that?

 2       I understand everyone's good faith -- obviously,

 3  the Court, the Government -- regarding witness safety; I think

 4  that's a given.  However, in this case, I do not -- I have no

 5  information that any defendant, there is a specific threat, or

 6  any witness safety issues that have arisen from any witness in

 7  this case -- excuse me -- any defendant in this case.  I'm not

 8  saying that it can't happen, but I'm saying there has been no

 9  evidence in four years of such a thing.

10       The Government's claim to witness safety -- and I don't

11  want to get in too much detail, because some of it may be

12  AEO -- but if there is an alleged threat to a potential

13  witness.  I would -- if it's what Mr. Barry was referring to,

14  my belief is that's not any defendant that was in this case;

15  that's some anonymous person.

16       And the other, you know, alleged glaring by a defendant in

17  this case at some event -- I believe, it was a public event --

18  seems pretty, well, speculative at best, and not attributable

19  to any of these defendants.

20       So I'm not undermining the idea of witness safety being

21  important, but I do think, in this case, in four years, no

22  defendant in this case, that's been out of custody or in

23  custody, has done anything to intimidate or harass a witness.

24       So I think it's on the -- the, you know, the Government

25  keeps saying that there's witness safety issues, but there has

1   been none in this case.

2          THE COURT:  All right.  Mr. Philipsborn, looks like

3   you were wanting to say something.

4          MR. PHILIPSBORN:  Your Honor, it's simply to add a

5   little bit to what Mr. Novak said, and I know that the Court

6   has this also, to some degree, in writing from us.

7          But the way the discovery was distributed, and I certainly

8   understand the logic of the Court's question about why we're

9   asking for more time in view of the fact that there is a

10  certain amount of time between now and the time of trial.  But

11  in the past few months, what we've been doing is getting items

12  of discovery -- and for the Wendt team, especially, as I

13  indicated in the papers that have been filed with the Court --

14  a lot of the information -- I mean, there is critically

15  important information on Mr. Wendt's alleged role in matters

16  that are charged, especially in Counts Two and Three, the Silva

17  conspiracy and the actual murder charge.  And, of course, that

18  overt act, as its charged in Count One.

19         So part of the difficulty has been through now six

20  discovery dumps to try to cull out reports that have to do with

21  sources of information that pertain to Mr. Wendt to see that

22  there actually minor -- minor but very important

23  inconsistencies between the reports we get in package 4, as

24  compared with package 5.

25         And all of a sudden -- and I mention this because it

PROCEEDINGS

1   really made an impression on us for fairly good reason,

2   you know, one of supposed Fresno missing-in-action persons who

3   is mentioned by others as perhaps, you know, having suffered a

4   dark fate, turns out to have, actually --

5          **MR. BARRY:**  Your Honor, we're getting into discussion

6   of AEO material here.

7          **THE COURT:**  Right.  And I understand what you're

8   talking about, Mr. Philipsborn.  I know -- I read your papers,

9   so I know what you're talking about.

10          **MR. PHILIPSBORN:**  But that example is actually a

11   fairly critical example, because without having -- we're

12   obviously not getting the universe of information that the

13   Government will be relying on going to trial, because it

14   rightly is -- or at least it is using its prerogative to

15   withhold Jencks Act information.  And no doubt there are some

16   current interviews ongoing that we'll end up seeing at some

17   point later on.

18          But if we don't have -- I can't tell you that I know the

19   baseline of what information it is the Government thought we

20   were entitled to, as of now, that would inform Wendt of the

21   evidence that the Government wanted us to have as of now,

22   because of the level of inconsistency and some of the

23   disseminations.

24          And as Mr. Waggener has informed the Court, the intent of

25   the Government for us to have what turns out to be kind of a

1  reordered and expanded dump of the previously unredacted

2  discovery.

3        And so part of what I think my colleagues and I have been

4  trying to explain is, we've been trying to put order in this so

5  that we actually know what information it is we need to rely on

6  to have our investigators actually pursue in the field.

7  Otherwise, we would be returning to you.  And I actually am in

8  the process of doing this.

9        We had people in the field relying on -- or on the

10  assumption that we had a fair percentage of the information

11  that we needed to have in hand, so we had people doing

12  fieldwork.  It now turns out that what we did was only sort of

13  a very small part of the iceberg of what we should have been

14  doing.  And I don't want to then have to return to the Court

15  later in the process to tell the Court that we now have

16  discovered the fact that there are yet more significant reports

17  that we should have paid attention to to inform our

18  investigation.

19        So we're really scrambling to try to put together our

20  understanding of what it is we have in hand; how it informs

21  the -- us of the information that the Government has in hand;

22  the likely witnesses we're going to see on particular incidents

23  so that we can, then, actually move forward with the

24  investigation.

25        And to think -- given the fact that we're still in the

1    process of culling, analyzing, making sure that we know what

2    our universe is, I think that's the reason that Mr. Novak has

3    explained that what the Court views as, essentially, the time,

4    the 90-plus days that we would have to do our work before the

5    bell rings, is actually a bit illusory as far as we're

6    concerned.

7        We're not yet in the position to send people into the

8    field in an informed way, with confidence that we've had access

9    to everything that we should have had access to as of now; that

10   we understand what we have in hand as of yesterday, as of now.

11       **THE COURT:**  So given what you have now as of

12   yesterday, which appears to be a coherent -- I think the word

13   used is "pristine" -- in the form that had been sought, albeit

14   later than you had wanted, when would you be ready to implement

15   and execute, whether it's a 90-day plan or a 135-day --

16   whatever, assuming for now it's a 90-day plan, when would you

17   be ready to undertake the 90-day plan, given what you have now?

18       **MR. PHILIPSBORN:**  And just to clarify the Court's

19   understanding, respectfully, because -- we didn't make it

20   clear.

21       The, quote/unquote, pristine set is a pristine set of

22   previously unredacted material.  The 30-some-thousand pages

23   that Mr. Waggener was referencing is added to more pages of

24   materials, plus the, you know, recordings, et cetera, that

25   we're in the process of getting, those were previously

1   unredacted materials.

2      So we have, we have a, quote/unquote, pristine set that's

3   now in a position in which it can be coded, and it's being

4   coded.  And it's going to be entered into a database that we

5   then, you know, can get organized information from.  But

6   there's also previously unredacted material that -- that is

7   currently being provided to us in a way that it can be

8   incorporated into our database as well.

9      So the answer to the Court's question is -- I mean, we

10   made the Wendt motion, and other -- other colleagues in Group 1

11   gave an estimate of a May trial date based on our assessment of

12   how long it would take for us to get it together.  And we

13   understand that the Court may not want to give us that much

14   time, but at the same time, the reality is, as the Court

15   mentioned at the beginning of this part of the hearing, we are

16   at least two-and-a-half to three months behind the point that

17   we expected to be at right now.

18      **THE COURT:**  Well, all right.  But it's not total time

19   lost.  It's not like nothing happened in these two-and-a-half

20   months.

21      So I understand that getting what you've now gotten is

22   two months, two-and-a-half months later than what you thought,

23   had planned, but that's not to say nothing happened during that

24   period, and no preparation was being done.  I understand that

25   there is some delay, but -- all right.

**PROCEEDINGS**

1    Let me hear from the Government.  Why not grant some

2    continuance in view -- there has been some delay in -- in the

3    sequence of things that was necessary in order to get these

4    documents in a way that could be organized in order to lay the

5    foundation for an investigation strategy, and so -- and given

6    the time left, why shouldn't there be some continuance?

7         **MR. BARRY:**  Thank you, Your Honor.

8    So the -- we've laid everything out in our papers, so I'm

9    not going to belabor those points.

10   But the fact is that a lot of the material has -- is

11   material that was produced years ago.  You know, it's material

12   that could be searched.  You know, if there is a question of,

13   like, a particular source, that, you know, Mr. Waggener in his

14   papers indicated that, you know, the watermark issue which was,

15   again, something he suggested, you know, was causing problems

16   with the OCR-ing.  Well, that indicates that the material can

17   be scanned and has been scanned for, you know, the -- say a

18   particular defendant's name or a particular incident or a

19   particular location.  So the defense has had this material for

20   a very long time.

21   The Government identified the overt acts it was going to

22   introduce in April of 2020.  You know, the investigation, the

23   defense had claimed was slowed by COVID.  The Court has baked

24   that into its 90-day limitation.

25   So, again, we stressed that in our filing.  I'm not going

**PROCEEDINGS**

1    to repeat it.

2        But I just want to emphasize that the Court here has given

3    the defense more time than in any other RICO case in this

4    district.  We have laid out the scheduling orders in other

5    cases.  The defense will have more time with *Jencks* material.

6    They will have more time with the AEO embargo being lifted.

7    They will have more time pretrial to talk about this with their

8    clients.  The -- you know, materials have been disclosed to the

9    defense in -- much earlier than in other cases.

10       The -- you know, the accusations, the charges in this case

11   aren't unique.  They aren't so foreign to other RICO cases.

12   The defendants in those cases get the materials much closer to

13   trial.  And the reason for that is that, you know, as trial

14   approaches, the risk to witnesses exponentially increases

15   because it becomes more real.

16       You know, the defendants are on trial for what could be

17   mandatory life sentences.  And so, as things get up to trial,

18   as witnesses are concretely identified, that's when the risk is

19   as its most grave.  So we believe that the Court should keep

20   the trial date.

21       But I do want to make -- I do want to argue one point,

22   though.

23       The Court carefully considered when it was going to lift

24   the embargo for AEO de-designation, and when witness identities

25   could be -- the information in the reports could be disclosed

**PROCEEDINGS**

1   to the clients, and it did so for very, very good reasons.

2       The defense keeps chipping away at this:  Oh, we need

3   45 days.  We need this.  We need more time.

4       You know, almost in every hearing, in every filing they

5   are asking the Court to reconsider that.  And there's -- and as

6   I indicated, the impetus for the Court's ruling on that has

7   only gotten stronger.  So we urge the Court to maintain its

8   rulings, and not lift it more than the 90 days.

9           **THE COURT:**  All right.  Let me get a clarification.

10      With respect to the jury challenge, my understanding now

11  is that the -- this Court has -- its amendment to the jury plan

12  has been approved and -- by the Ninth Circuit that the wheels

13  is underway.  I also read in the paper, I thought that the

14  census information is now out, or at least it's -- progress has

15  been made.

16      What's the timing on the jury matter, jury challenge,

17  Mr. Philipsborn?

18          **MR. PHILIPSBORN:**  Your Honor, we go back to

19  Judge Beeler tomorrow to get what, at least I'm hoping, is our

20  last dollop of information.

21      We do -- we do not yet have the information disclosed

22  about the composition of the 2021 wheel or, in other words, the

23  wheel intended for the Group 1 trial.  And we've also asked for

24  some other items.

25      But we're moving apace to get access to that information.

1    And our -- at least our hope is that after tomorrow we'll be in

2    a position in which we'll have access to information that can

3    be run by our experts and we can begin putting together the

4    challenge.

5        **THE COURT:**  Okay.  So if you do get that information,

6    if the census information is available you get the information

7    on the actual wheel that's going to apply to this case, which

8    is a 2022 wheel, you expect to have that filing within the next

9    month or so, or what's your best guess?

10       **MR. PHILIPSBORN:**  Your Honor, we had hoped to have

11   clarity about when -- about the extent of the data from the

12   pertinent wheel that we would get access to, as well as having

13   a date certain by which we would have the Court's AO12 reports

14   by now.  So I'm hard-pressed to answer.  My hope is that we

15   could file within 60 days of tomorrow, with suitable data

16   analysis.

17       I will file -- if it please the Court, I will file a

18   status report after we get the order from Judge Beeler.

19       The one thing that concerns me is, if we aren't able to

20   get access to -- if there are disputes about the extent to

21   which we get access to information from the jury wheel, we may

22   have to bring that issue to the Court -- to your attention.

23   But, hopefully, not.

24       **MS. PENG:**  Your Honor, I just want to speak on this

25   briefly -- which is, you know, we are appearing before

**PROCEEDINGS**

1   Judge Beeler on a third request for jury information.  The

2   Clerk's Office, as I understand, does not yet have the

3   fully-constructed wheel, as of last week, to give to

4   Mr. Philipsborn.  So that's been the consistent answer, is that

5   the wheel is simply not ready yet.

6       And I understand they are very much aware that, as soon as

7   it's ready, and the AO12s for the actual relevant wheel, they

8   will disclose that information to Mr. Philipsborn.  And

9   the Government has not opposed that in any way.

10      So, I think, my understanding, it's not ready yet,

11  although it sounds some additional updates might have been

12  forthcoming recently.  So that's where we are.

13      We're before Judge Beeler, I think, you know, not on the

14  issue of the actual information that would be pertinent to the

15  jury pool, but on some what we would consider ancillary issues

16  that are requested by Mr. Philipsborn that Judge Beeler can

17  resolve at the next hearing.

18          **THE COURT:**  All right.

19          **MR. BARRY:**  So, Your Honor, just on a sort of legal

20  point with that.

21      I mean, as we indicated in our filing -- and Ms. Peng just

22  stated -- you know, a lot of the complaint from the defense is

23  that we dumped -- that we haven't been given records, and those

24  records don't exist yet.  But it's -- so it can't be the case

25  that, as a matter of law, no trial in the Northern District can

**PROCEEDINGS**

1   take place until the defense has had months to analyze records

2   pursuant to the wheel.

3        And I also, you know, point out that we haven't seen the

4   motion yet, but this very challenge has been defeated every

5   single time it's been raised.  In fact, the most -- even

6   Mr. Philipsborn's filing indicated, quite frankly, that the

7   analysis of the representation of the jurors is, I think, it

8   was very well done, or it's quite good, or something like that.

9        But, again, you can't -- it can't be a precept that no

10  jury can take place in this district until defendants have

11  months to analyze the jury information that doesn't exist yet.

12       **THE COURT:**  All right.  I -- in considering the

13  four-factor test, which you've all identified with respect to a

14  motion to continue, I find that there are grounds in this

15  instance to -- for a brief continuation of the January 10th

16  trial date.

17       We are approximately, in some ways, two, two-and-a-half

18  months behind in some measure with respect to the disclosure of

19  the unredacted document production; on the other hand, it's not

20  like nothing happened and it's not like, you know, there was a

21  complete delay in everything else.  It's not like the defense

22  was unable to conduct any kind of investigation.

23       I'm going to continue this to a March 14th trial.  That's

24  slightly over two months.  I think that is sufficient to make

25  up the time, and considering the need to ameliorate the accused

PROCEEDINGS

 1  situation which is one of the factors here, while keeping in

 2  mind the trial schedules and everything else that needs to go

 3  on.

 4      I also do have to keep in mind that the more we delay

 5  Phase 1, Group 1, that means it could be some delay in Group 2,

 6  and we do have one defendant who is in custody, and I'm well

 7  aware of his due process rights.  And so there are a number of

 8  concerns that mitigate waiting until early summer to try this

 9  case.

10      So I'm going to say a March 14th trial date, but I want to

11  do jury selection the week before, because it may take us a

12  whole week to get a jury, or it may take several days.  So I

13  intend to start jury selection on the 7th.  And, hopefully,

14  we'll have a jury, but we'll not begin in earnest until the

15  14th in this case.

16      And I assume the Government is still anticipating about a

17  three-month trial or less?

18          MR. BARRY:  Or less, Your Honor, yes.  A lot of it

19  depends on -- on the cross-examination and other things.  But,

20  yeah, we're confident that we can get it done in that time.

21          THE COURT:  Okay.  So that leaves the question that's

22  been raised about the 90-day AEO lift period.  And I share

23  the Government's concern because there is a lot of stuff there.

24  And looking at some of the materials, I think we have to be

25  very careful.  I have to be very careful about lifting that

**PROCEEDINGS**

1   concern too early.

2       Also, on the other hand, I'm mindful of the complications

3   and the fact that there are now a series of witnesses, some of

4   which will -- may play a very significant role in the various

5   counts.  Plus the fact that there are not only general

6   enterprise evidence that's going to be introduced, but the a

7   number of overt acts, even with the slimming down, that will

8   pertain to defendants in a manner such that some of the

9   defendants may not have any personal involvement or knowledge

10  and, therefore, we're trying sort of mini cases.  It's almost

11  like trying somebody else's case on some of these overt acts.

12      And I think that adds to the complication of trying to do

13  it all within a 90-day period.

14      On the other hand, I'm very concerned about the safety

15  concern -- about the safety implications.  So I'm going to

16  extend that period by 15 days.  That's not what the defendants

17  want, but I think the Government's articulation of the safety

18  concerns are -- must be considered, and I think that is a fair

19  balance.

20      So the AEO will be lifted 105 days before trial begins and

21  trial begins on the 14th, so we'll have to do the math and

22  figure that out.  But basically that means, I think, some time

23  in December, if I'm not mistaken.  We'll have to count

24  backwards here, maybe early December or end of November or

25  something.

PROCEEDINGS

1    So I'm going to get out an order with new dates.  I'd

2    like -- I'd like the parties to meet and confer and come up

3    with a schedule with respect to the -- what we talked about

4    earlier, sort of the exhibit list disclosure date early enough

5    so as to precipitate whatever motions in limine with respect to

6    objections to evidence.

7    I don't want to wait until the pretrial conference.  There

8    is too much to be going on.  Jury selection is going to be

9    complicated.  I'd rather get that done earlier than later.  So

10   I would like you to meet and confer to see if you can come up

11   with a schedule in that regard.

12   **MR. KRISHNAMURTHY:**  Your Honor, if I might, I think

13   the prior pretrial schedule the Court ordered actually included

14   those dates.  I think, under old schedule, November 1st was the

15   Government's deadline for an exhibit list.  And we can

16   certainly work with the defense to propose new dates that makes

17   sense in light of this new trial date.

18   The one issue I wanted to flag, though, is that there's

19   some deadlines on those schedule that were both tied to the

20   first trial date, and are in very short order.  The one that

21   I'm thinking about is the *Jencks* deadline, which I think would

22   have been October 10th, otherwise.

23   And so I wanted to confirm that our *Jencks* deadline is

24   still 90 days before the newly set trial date.

25   **THE COURT:**  I'm going to make that 105 days as well,

**PROCEEDINGS**

1  so whatever, subtract -- go back from March 14th, and that will

2  be your *Jencks* date.

3         **MR. KRISHNAMURTHY:**  Thank you, Your Honor.

4         **THE COURT:**  There is -- and there is a motion -- also

5  there is a notion about, I think, a request by the defense to

6  withhold the motion to exclude co-conspirator or to continue or

7  revise the motion to exclude co-conspirator statements until

8  after the lift.

9      Is that still an issue?

10        **MR. NOVAK:**  It is, Your Honor.  This is Richard Novak

11 for Mr. Nelson.

12     What we filed was an application to vacate the deadline so

13 that those -- and to reset it so that those motions or,

14 I guess, what the Court has asked for is one all-encompassing

15 motion concerning the co-conspirator statements so that our

16 views on those things can benefit from our client and the

17 alleged co-conspirators making those statements.

18     So there are questions about the foundation for the

19 assertion.  There are questions about the relevance.  There's

20 questions about whether they actually are co-conspirator

21 statements under the rule.

22     And as I think we tried to -- as I think which adequately

23 pointed out, it's very difficult for us to address those issues

24 in a vacuum, and that vacuum includes the type of concerns that

25 Mr. Thomson and Mr. Clough raised.

**PROCEEDINGS**

1          So I think, in light of what the Court has structured now,

2    the motions, if any, to exclude co-conspirator statements need

3    to be filed after that -- reasonably after that 105-day date.

4          **THE COURT:**  What's the Government's view of that?

5          **MR. KRISHNAMURTHY:**  Your Honor, I can address this.

6          I mean, as initial matter, we were very surprised to see

7    that application to extend the dates.

8          As the Court might recall, there was a very extensive

9    back-and-forth between the parties about what information

10   the Government would provide.  We provided certain information.

11   They went back to the Court and the Court ordered to us provide

12   additional information, which we did.  And not once during

13   those discussions did the defense mention that their position

14   was that they couldn't litigate this issue without the input of

15   their clients.

16         And so we were a little bit surprised that they requested

17   this information, if their position was, all along, they

18   weren't going to file motions on that schedule.

19         **MR. NOVAK:**  I think that it's fair for the Government

20   to say it was a surprise, but I did ask the Government what

21   their position was on our application before we filed it.  And

22   the Court did, at least temporarily until today, vacate that

23   deadline.

24         I think that once we begin to look at, especially,

25   Your Honor, the non-electronic statements in terms of who

1    the Government's witnesses are who would be saying

2    "co-conspirator so-and-so said such-and-such a thing to me on

3    such-and-such a date," we, as defense counsel, realized that we

4    really can't effectively address the proffered evidence without

5    discussing it with our clients.

6         And that's why in my papers -- although, you know, one

7    could argue that it really isn't a Sixth Amendment issue -- it

8    does remind me of a chronic violation where I just simply can't

9    meet the Government's proffer without discussing it with my

10   client, at a minimum, let alone the co-conspirator -- the

11   alleged co-conspirators who supposedly told Government's

12   witness X such-and-such a thing.

13        So Mr. Krishnamurthy may be surprised that we decided that

14   we would essentially be ineffective if we tried to litigate

15   this in advance of the -- what I'll just call the AEO lifting.

16   But I think that now that the Court has -- now that we have the

17   chart.  It is very extensive, as the Court knows; I attached it

18   to our joint application.

19        Now, that we have this 105-day period, I'm -- what we're

20   asking the Court to do is set a reasonable date after that

21   105-day period begins so that we can go over these alleged

22   co-conspirator statements with our clients, and with any of the

23   alleged coconspirators whose hearsay statements the Government

24   want to offer -- I mean, it's not hearsay, but whose statements

25   to witnesses the Government wants to offer.

**PROCEEDINGS**

1          So whether that's 30 or 45 days after the 105, I mean,

2   that's up to the Court.  But I at least need to be able to go

3   over that very lengthy chart with my client.  And I assume that

4   Mr. Ott's counsel and Mr. Wendt's counsel need to do the same.

5          And we've -- given who is listed in that chart, we're

6   going to need to see if we can speak with some or all of those

7   alleged co-conspirators.  Some are defendants and some are what

8   the Government calls unindicted co-conspirators.

9          **THE COURT:**  All right.  Mr. Krishnamurthy, could you

10   respond to the substantive -- I understand sort of the surprise

11   thing, because that hadn't been raised when the defense asked

12   for greater detail.  But what about the merits of this

13   question, that it seems logical that in order to meet and try

14   to defeat a claim of co-conspirator statements admissibility,

15   that being able to talk to the client might be helpful to

16   understand the context and to rebut some of that?

17          **MR. KRISHNAMURTHY:**  Yes, Your Honor.

18          And I think that the concerns have to be placed in sort of

19   two categories.  One is -- which Mr. Novak just raised -- the

20   possibility that some of those co-conspirators are going to say

21   that they never said those things at all, which I don't think

22   is properly litigated in this sort of a motion in limine.

23          If their response is going to be that they never said

24   that, or our witnesses are incorrect or lying, I mean, that's

25   going to be an issue that comes out at trial.

PROCEEDINGS

1          Second, I think --

2          **THE COURT:**  I think the issue is more of whether it

3     was in furtherance.  I mean, that's going to be the key here,

4     whether some statement was done in furtherance.  So you need

5     context.  You need to understand.  You know, somebody might

6     say, you know:  No, well, that statement was a really referring

7     to X, not to Y.

8          I mean -- so I assume that's the issue.

9          **MR. KRISHNAMURTHY:**  Right.  And that's why I said that

10    there's two categories.  The first is the point that I

11    previously made.

12         As far as the context, it may be that there are, in some

13    cases, additional context is necessary.  But when I think

14    the Court first looked at this chart at the last hearing, or

15    maybe two hearings ago, the Court noted that some of the

16    context is sort of evident from the face of the statements.

17         And so, at the very least, I think the defense should be

18    required to segregate those segments that they think can't be

19    litigated without the input of clients, and we should go

20    forward on the rest of them sooner than that.

21         You know, I don't know that there is going to be an

22    all-encompassing motion that the defense can bring.  Because,

23    as the Court knows, additional statements are going to come out

24    as we prep for trial and, potentially, even on the stand from

25    people we haven't met with yet.  And so this issue is probably

1   going to be a recurring issue as we get closer to trial.

2       **THE COURT:**  Well, the other question is:  What's the

3   harm in delaying the filing to -- and I'm getting a couple of

4   chat messages here from different angles, and everybody seems

5   to agree that my 105 days is November 29th.

6       So what's the harm in having that motion deferred, finally

7   deferred until, you know, some time after that, and then having

8   it heard probably in January, it sounds like, at this rate?

9       **MR. KRISHNAMURTHY:**  Your Honor, the only -- the only

10  harm is that I think we tried to construct a schedule prior --

11  you know, with the January trial date in mind, that allowed all

12  the parties and the Court time to litigate these issues in an

13  orderly process.

14      And I feel like we're sort of creeping into the situation

15  where, like, nothing is going to get done until that 105-day

16  window, which I think is going to be very difficult for all the

17  parties and the Court.

18      **THE COURT:**  All right.  I'm going to allow -- because

19  I've now extended and elongated the trial schedule and this AEO

20  period a bit, I'm going to allow the motion to exclude to be

21  filed.

22      I would like you all to stipulate that as to part of the

23  schedule.  And what I want the parties to do is, with the new

24  trial dates, give me a new scheduling and include, build in

25  the -- a new date for the motion and hearing on the motion to

**PROCEEDINGS**

1   exclude co-conspirator statements.

2       I would like to have that heard as early as possible.  I

3   don't want to save everything to the end.  On the other hand,

4   there is going to be some period of time in there, so I'm

5   forecasting this looks like, perhaps, an early January or

6   something around that period hearing, on the co-conspirator

7   stuff.

8       And then I don't know what you can stipulate to on the

9   motions in limine with respect to the exhibit list.  But I want

10  to use those early months to try to resolve as many as of

11  fact -- as many of the evidentiary issues as possible before we

12  get into the pretrial stuff in earnest, because there's going

13  to be a lot in terms of jury instructions and everything else.

14      So I'm going to direct the parties to meet and confer, and

15  come up with a joint schedule; but I do want to hear that

16  motion to exclude on the early side.

17      So I'll let you figure that out.  Okay?

18          **MR. NOVAK:**  Thank you.

19          **THE COURT:**  All right.  Is there anything else that we

20  need to cover before I go into in camera hearings?

21          **MR. GOHEL:**  Your Honor, this is Jai Gohel for

22  Mr. Nelson.

23      Can I inquire with the Court what the Court is

24  contemplating for a trial schedule, like, the week, you know,

25  what days the trial will be in session and what times, if

PROCEEDINGS

```
 1    the Court knows.
 2            THE COURT:  Yeah.  My usual schedule is 8:30 to 1:30,
 3    Thursday -- except for Thursday; Thursdays are dark.  But we're
 4    in trial Monday, Tuesday, Wednesday, and Friday.
 5            MR. GOHEL:  Okay.  A second issue, Your Honor, is
 6    there was something filed today -- I think today or yesterday,
 7    by Mr. Barry regarding a reconsideration.  I don't want to go
 8    into more detail, because I think it's based on AEO.
 9            THE COURT:  Yeah.
10            MR. GOHEL:  I would like the opportunity to respond in
11    writing --
12            THE COURT:  Yeah.
13            MR. GOHEL:  -- if the Court is considering it.
14            THE COURT:  I'm sorry.  What was that?
15            MR. GOHEL:  If the Court is considering the
16    reconsideration, I would like a chance to respond in writing.
17            THE COURT:  Yeah.  Can you file something -- I don't
18    know.  When can you file something?
19            MR. GOHEL:  By Monday.
20            THE COURT:  Okay.  That's fine.
21        And I'll, then, take it under submission.  If I need
22    argument, we'll schedule something; otherwise, I'll do it on
23    the papers.
24            MR. GOHEL:  Thank you, Your Honor.
25            THE COURT:  All right?
```

PROCEEDINGS

 1             **MR. GOHEL:**  Yes, Your Honor.

 2             **THE COURT:**  Okay.  So I've got two matters under seal

 3   that we've got to go to.

 4        I think Angie has sent out -- Angie, have you sent out the

 5   information?

 6             **THE CLERK:**  I am sending right now.

 7             **THE COURT:**  Okay.  Why don't we set the Ott matter

 8   first.

 9             **THE CLERK:**  Okay.  Okay.

10             **THE COURT:**  And we'll take the other one after that.

11        So, I guess, just stay tuned for an e-mail when your turn

12   is up.

13             **MR. NOVAK:**  Before we all leave, Your Honor, did

14   the Court want to set another status conference?

15             **THE COURT:**  Yes.  Yes, we do.

16        Maybe we should set one around the time that the AEO date

17   the lift date -- let's see -- or shortly after that.

18             **THE CLERK:**  Your Honor, we could set either the day

19   before Thanksgiving or possibly November 30th.  I would have to

20   rearrange November 30th in the morning.

21        I will need to look at the classroom schedule.

22        One minute.

23             **THE COURT:**  Okay.

24                        (Pause in proceedings.)

25             **THE CLERK:**  For the week of November 22nd, we do not

1    have the classroom available.

2              **THE COURT:**  The following week.

3              **THE CLERK:**  The following week, we have the classroom

4    available for December 1st in the morning, but we have trial

5    that day.

6              **THE COURT:**  Oh, yeah.

7              **THE CLERK:**  Jury selection.

8              **THE COURT:**  The 30th is not available?

9              **THE CLERK:**  It's not available for the classroom.  Let

10   me check on the Friday.  It could be available.  I'm not sure.

11             **THE COURT:**  That Friday, I have a -- I can't do it

12   that Friday.  I'm not available.  I have a conference.

13             **THE CLERK:**  Okay.  Then the only availability for that

14   week for the classroom would be December 1st in the morning,

15   but we have a jury selection at that time.

16             **THE COURT:**  What about the week after?

17             **THE CLERK:**  Okay.  Let's see.  The week after

18   December 10th, that is an open classroom schedule.  That's the

19   Friday, either morning or afternoon.

20             **THE COURT:**  Why don't we take the afternoon.  Then it

21   won't interfere with the trial.

22             **THE CLERK:**  Okay.  December 10th at 1:00 p.m.

23             **THE COURT:**  Can we do it at 1:30?

24             **THE CLERK:**  1:30.

25             **THE COURT:**  The trial runs until 1:30.  Okay?

PROCEEDINGS

1          **THE CLERK:**  Okay.

2          **THE COURT:**  December 10th, 1:30.

3      And no objection to exclusion of time?

4          **MR. NOVAK:**  No objection.

5          **THE COURT:**  Hearing none, I will exclude time between

6   now and the next calling of the case, which is December 10th,

7   on the grounds that time is needed for effective preparation of

8   defense.

9          Also, we have new counsel for Mr. Foakes, so continuity of

10  counsel.  And we have already designated this case as complex.

11  I find that the ends of justice outweighs the public's and the

12  defendants' interest in a speedy trial.  And so we will -- if,

13  Mr. Barry, someone on your team can prepare an exclusion order,

14  for the record, I would appreciate that.

15      So otherwise, we'll see you on the 10th, and we'll take

16  the next matter in camera.  Okay?  Thanks everyone.

17          **THE CLERK:**  Court is adjourned.

18          (Proceedings adjourned at 10:36 a.m.)

19                          ---o0o---

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Friday, December 10, 2021

_____

Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court