STEPHANIE M. HINDS (CABN 154284)
United States Attorney

TOM COLTHURST (CABN 99493)
Chief, Criminal Division

AJAY KRISHNAMURTHY (CABN 305533)
KEVIN J. BARRY (CABN 229748)
LINA PENG (NYBN 5150032)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7050
    FAX: (415) 436-7050
    Ajay.krishnamurthy@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 17-CR-533-EMC |
| Plaintiff, | United States' Motion to Temporarily Preclude Russell Lyles Jr. from Physically Being in the Courtroom |
| v. | |
| JONATHAN JOSEPH NELSON, et al., | |
| Defendant. | |

The United States moves to temporarily exclude Lyles from being present in the courtroom during the testimony of B.T. As the Court is aware from Lyles' recent letter to the Court regarding Lyles' actions outside of the courtroom that were brought to the Court's attention, Lyles has been attending the trial in person.

## BACKGROUND

As the Court recalls, the government moved to admit testimony by B.T. of domestic abuse by Lyles, which the Court denied. In that motion, the government provided the background of the abuse by Lyles of B.T. B.T. ended her relationship with Lyles in August 2016 when he tried to kill her in front their children. In another incident a few years prior, Lyles assaulted her and split her face open and she

had be treated at the hospital. Lyles would knock her unconscious and burned her body while she was unconscious. At times, he brought B.T. on the bed, struck her in the face, and then pulled her down the stairs. She was beaten regularly, and she received stiches, staples, black eyes, and broken noses at his hands. She was not allowed to go to the bathroom without permission and was only allowed to wear certain things to the grocery store.

Lyles told B.T. that if she ran and tried to hide, he is a member of the Hells Angels, it's a worldwide organization, and he would find her.

B.T. has been afraid to testify because Lyles has told her that he will kill her and her whole family if she does. B.T. has expressed that she remains extremely fearful of testifying, and that Lyles will Lyles will intimidate, harass, or cause her fear/harm by his physical presence in the courtroom. She has expressed that she would not be able to provide testimony if he is physically present.

Further, as evidenced by the 27-page letter submitted by Lyles to the Court recently in the context of the incident outside the courtroom during trial, clearly Lyles still harbors strong beliefs regarding B.T. including with respect to an apparent state court proceeding over custody. Thus, separate and apart from intimidation to a witness, there is a risk of disruption to this Court's proceedings with Lyles' presence together in the courtroom with B.T.

## ARGUMENT

I. Excluding Lyles from the Courtroom Does Not Implicate Any Sixth Amendment Confrontation Right.

Lyles does not have a right to confrontation at the trial of Group One because he is not one of the codefendants currently at trial. Although Lyles may be charged as a codefendant in the Superseding Indictment, his Sixth Amendment right to confrontation only attaches once his own trial begins. *See Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right."); *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (holding that "the right to confrontation is a trial right"); *California v. Green*, 399 U.S. 149, 157 (1970) ("[I]t is th[e] literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause[.]"). As for the Group One defendants, their rights to confrontation will remain unaffected by Lyles' exclusion as they maintain their right to confront and cross-examine the witness. Thus, temporarily excluding Lyles from

the courtroom during the testimony of the B.T. does not violate either his Sixth Amendment confrontation right, or that of the Group One defendants.

II. <u>Excluding Lyles from the Courtroom Does Not Violate the Right to a Public Trial</u>

"Although the right to a public trial is protected by the First Amendment and Sixth Amendment, it is not absolute." *United States v. Yazzie*, 743 F.3d 1278, 1286–87 (9th Cir. 2014) (citation omitted). Under the Sixth Amendment, "[t]he requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions...." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). Under the First Amendment, the press and public have an implicit right of access to criminal trials, *Waller*, 467 U.S. at 46; *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980), which allows citizens to exercise their constitutionally protected right to discuss governmental affairs in an informed manner. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604–05 (1982).

In *Waller*, the Supreme Court laid out a four-factor framework for "determining whether a closure of proceedings violates a defendant's Sixth Amendment public trial right." *United States v. Rivera*, 682 F.3d 1223, 1235 (9th Cir. 2012). However, the Ninth Circuit "has held that the *Waller* framework applies only to total closures—i.e., where 'all persons other than witnesses, court personnel, the parties and their lawyers [a]re excluded for the duration of the hearing[.]'" *Id.* (citing *Sherlock*, 962 F.2d at 1357). "A less rigorous standard applies where a partial closure is at issue." *Id.* A partial closure is justified where "the trial judge had a substantial reason for the closure," and where "the closure was narrowly tailored to exclude spectators only to the extent necessary to satisfy the purpose for which it was ordered." *Sherlock*, 962 F.2d at 1357. Additionally, there are three procedural requirements that must be satisfied before a trial court may order a partial closure: (1) the court must hold a hearing on the closure motion; (2) the court must make factual findings to support the closure; and (3) the court must consider reasonable alternatives to closing the courtroom. *Id.* at 1358–59.

Here, the Court has already limited the capacity of the courtroom due to COVID-19, and provided the alternative of an overflow room, as well as a telephonic line.

To the extent that excluding Lyles from the courtroom still constitutes a partial closure beyond the Court's existing accommodations, it is justified for three reasons. First, there is an important reason here for excluding Lyles—specifically, to protect the testifying witness from intimidation, harassment, and other emotional harm. Federal courts have recognized similar justifications for excluding spectators during a criminal trial. See *United States v. Hernandez*, 608 F.2d 741, 747–48 (9th Cir. 1979) (to protect witness from harassment and physical harm); *Sielaff*, 561 F.2d at 695–96 (to protect witness's dignity in rape trial); *United States v. Akers*, 542 F.2d 770, 772 (9th Cir.1976) (to avoid disorder); *United States v. Eisner*, 533 F.2d 987, 993–94 (6th Cir. 1976) (to protect witness with fear of testifying in public); *Geise v. United States*, 262 F.2d 151, 155 (9th Cir.1958) (to protect minor witness from embarrassment in rape trial). Second, the "closure" requested by the government here—which is the exclusion of a single spectator for the limited period of the testimony of B.T.—is narrowly tailored and no greater than necessary to satisfy the important purpose it serves.

Finally, the government's request that Lyles be permitted to view the testimony from another room via videoconference is an eminently reasonable alternative to excluding him from the courtroom during this portion of trial altogether. As the Supreme Court has recognized, "trial judges have been given broad discretion to exclude spectators to protect order in their courtrooms," and courts have properly ordered the temporary exclusion of some members of the public during testimony of certain witnesses. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 388 n.19 (1979) (collecting cases). Thus, to meet the procedural requirements for a partial closure, the government respectfully requests the court hold a brief hearing to make factual findings in regard to the government's motion prior to ordering the temporary exclusion of Lyles from the courtroom.

III. <u>Excluding Lyles Does Not Impact His Right to Present or Participate in His Own Defense</u>.

As a final matter, the temporary exclusion of Lyles from the courtroom will not affect his right to prepare or present a defense in his own case. Under the government's proposal, Lyles will fully maintain his ability to observe the trial, including the testimony of B.T., since he will be permitted to observe in the overflow room (which the Court has already implemented because of COVID-19 procedures). Lyles' physical exclusion from the courtroom during the period of B.T.'s testimony neither

1  prevents him from seeing and hearing what B.T. will say, nor from consulting with his attorney
2  regarding the testimony.

DATED: April 21, 2022                                  Respectfully submitted,

                                                       STEPHANIE M. HINDS
                                                       United States Attorney


                                                       _____/s/_____
                                                       KEVIN J. BARRY
                                                       LINA PENG
                                                       AJAY KRISHNAMURTHY
                                                       Assistant United States Attorneys